IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN APPLE IPHONE 6, BLACK AND GREY WITH A CRACKED SCREEN, IMEI: 353025096282595; AND AN APPLE IPHONE 8PLUS, BLACK SCREEN, DARK GREY BACK, MODEL: MQ8T2LL/A, IMEI: 352977096343077 CURRENTLY LOCATED AT THE LAW ENFORCEMENT CENTER LOCATED AT 601 E. TRADE STREET, CHARLOTTE, NC 28202 | Case No. 3:19 mj 50 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Ernesto L. Negron, being duly sworn, do hereby state the following:

### EXPERIENCE OF AFFIANT

1.  I am employed as a Special Agent with the Federal Bureau of Investigation (FBI) currently assigned to the Violent Crimes Task Force at the Charlotte Division of the Federal Bureau of Investigation (FBI). I have been employed in this position since October 2017. Prior to that, I was assigned to the Safe Streets Task Force working Latin and Hispanic gangs. Prior to my assignment to the Charlotte Division of the FBI, I worked for the FBI San Juan Division, Ponce Resident Agency working criminal matters. I have both prepared and assisted many other law enforcement officers from a variety of local, state, and federal law enforcement agencies as well as Assistant United States Attorneys in the preparation of affidavits for search warrants.

2.  During my twelve (12) year employment with the FBI, I have been the case agent on numerous investigations involving narcotics smuggling, financial crimes, transnational gangs, and counterterrorism investigations. During these investigations, I have participated in both the

execution of search and arrest warrants, along with the seizure of evidence including but not limited to that determining the existence of gangs and/or criminal enterprises and organizations.

3. The facts in this Affidavit come from my personal observations, witness/suspect interviews, training and experience, and the exchange of information obtained from other professionals in the law enforcement community. This Affidavit is intended to show merely that there is sufficient probable cause for the requested Warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18 United States Code, Section 1951, have been committed by John Henry MOORE. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## PURPOSE OF AFFIDAVIT

5. This Affidavit is presented in support of an Application for a Search Warrant for two cellular telephones. The cellular telephones were seized from inside the suspects' residence and they are further described as:

> **APPLE IPHONE 6, BLACK AND GREY WITH A CRACKED SCREEN, IMEI: 353025096282595; AND AN APPLE IPHONE 8PLUS, BLACK SCREEN, DARK GREY BACK, MODEL: MQ8T2LL/A, IMEI: 352977096343077 CURRENTLY LOCATED AT THE LAW ENFORCEMENT CENTER LOCATED AT 601 E. TRADE STREET, CHARLOTTE, NORTH CAROLINA (HEREINAFTER THE "SUBJECT PHONES").**

By issuance of this Search Warrant, I and/or other agents will attempt to access and download electronic data stored therein and related to the offenses described below.

## SYNOPSIS OF INVESTIGATION

6. The United States is investigating two commercial robberies that occurred in Charlotte, North Carolina, within the Western District of North Carolina. The investigation concerns possible violations of the Hobbs Act, Title 18 United States Code, Section 1951.

## PROBABLE CAUSE

7. The United States is investigating multiple commercial robberies that occurred in Charlotte, North Carolina, within the Western District of North Carolina within the time frame of December 1, 2018 and December 10, 2018. The investigation concerns possible violations of the Hobbs Act, Title 18 United States Code, Section 1951.

8. On December 1, 2018, at approximately 8:00 p.m., the Spectrum store located at 2222-C South Boulevard, Charlotte, North Carolina, was robbed at gunpoint. The armed suspect entered the store with a firearm in his hand, approached the employees, and demanded money. The suspect was described as a black male, wearing a mask over his head and a black Nike hooded sweatshirt. After the suspect grabbed the money, the suspect left on foot.

9. On December 10, 2018 at approximately 7:00 a.m., the Publix grocery store located at 2222 South Boulevard, Charlotte, North Carolina, was robbed at by a suspect implying that he had a firearm. The suspect entered the business and stated "Don't get shot" while holding his left hand in his pocket as if he had a handgun. As with the December 1, 2018 armed robbery of the adjacent Spectrum store, the suspect was a black male wearing something over his face and wearing the same Nike black hooded sweatshirt. The suspect demanded money from the Publix employee. The employee complied with the suspect's demand by giving money from the cash register. After obtaining the money, the suspect left on foot and witnesses observed the suspect cross the street into a Lowe's parking lot. Surveillance video shows the suspect putting

on a green jacket and a two-tone green and black toboggan and throwing down a black toboggan. The video shows the suspect entering the Lowe's store to purchase a can of paint. The black toboggan that was thrown on the ground was seized by law enforcement officers. Surveillance video further showed the suspect leave the Lowe's in a Yellow Cab.

10. Follow on investigation revealed that the Yellow Cab vehicle picked up the suspect from Lowe's following the robbery and drove the suspect to 523 Brookhill Road, Charlotte, North Carolina. The cab company records show that the phone number used to call the Yellow Cab was 704-309-8037. MOORE is on federal probation for committing two bank robberies in Georgia and South Carolina. John MOORE has been out on probation for a year or so after serving 165 months of incarceration. According to MOORE's federal probation officer, MOORE's phone number on file is 704-309-8037 and his listed probation address is 523 Brookhill Road, Charlotte, North Carolina.

11. Lowe's store employees recognized the suspect on December 10, 2018 as John MOORE.

12. On December 12, 2018, MOORE was arrested by the Charlotte-Mecklenbeburg Police Department (CMPD) Violent Criminal Apprehension Team (VCAT) at 523 Brookhill Road, Charlotte, North Carolina. At the time of his arrest, MOORE was wearing the green jacket seen in the image from Lowe's on December 10, 2018. Pursuant to a state search warrant, CMPD detectives seized a Glock 20, Gen 4 handgun with an obliterated serial number (the handgun was recovered from MOORE's bedroom and contained a loaded magazine); a black Nike zip-up hooded jacket matching the jacket worn by the robber both on December 1, 2018 and December 10, 2018; a two tone black and green toboggan, consistent with the toboggan

worn at Lowe's; two cellular phones; a pair of black shoes (consistent with the shoes worn at the two robberies); and 170 grams of marijuana and unknown pills.

13. The two cellular phones seized by CMPD detectives from MOORE's home on December 12, 2018 were an Apple iPhone 6, black and grey with a cracked screen, IMEI: 353025096282595; and an Apple iPhone 8Plus, black screen, dark grey back, model: MQ8T2LL/A, IMEI: 352977096343077.

14. CMPD detectives attempted to interview MOORE; however, MOORE was uncooperative. CMPD detectives obtained a search warrant for MOORE's DNA and a buccal swab was obtained.

15. Based on my investigation, I have determined that the provider for the cellular number 704-309-8037 is SPRINT PCS and the provider for number 980-253-0962 is AT&T. I have further determined that the cellular number 704-309-8037 is associated with the Apple iPhone 6, black and grey with a cracked screen, IMEI: 353025096282595 seized from MOORE's home on December 12, 2018. I have also determined that the cellular number 980-253-0962 is associated with the Apple iPhone 8Plus, black screen, dark grey back, model: MQ8T2LL/A, IMEI: 352977096343077 that was also seized from MOORE's home on December 12, 2018.

**TECHNICAL TERMS**

16. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of

transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; applications which have the ability to access, upload, and download information to and from the Internet and other applications and websites connected to the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet,

connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

18. Forensic evidence. As further described in Attachment B, this Application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the Warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a Search Warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions

about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the Warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the Warrant I am applying for would permit the examination of the device consistent with the Warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the Warrant.

20. *Manner of execution.* Because this Warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this Warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the Warrant at any time in the day or night.

## CONCLUSION

21.  I submit that this Affidavit supports probable cause for a Search Warrant authorizing the examination of the SUBJECT PHONES described in Attachment A to seek the items described in Attachment B for relevant evidence relating to violations of 18, United States Code, Section 1951.

Respectfully submitted,

Ernesto L. Negron
Special Agent
Federal Bureau of Investigation

*This Affidavit was reviewed by AUSA Matthew T. Warren.*

Subscribed and sworn to before me on this 14th day of February 2019.

THE HONORABLE DAVID C. KEESLER
UNITED STATES MAGISTRATE JUDGE
WESTERN DISTRICT OF NORTH CAROLINA

# ATTACHMENT A

Property To Be Searched

Apple iPhone 6, black and grey with a cracked screen, IMEI: 353025096282595; and

Apple iPhone 8plus, black screen, dark grey back, Model: mq8t2ll/a, IMEI: 352977096343077;

both currently located at the law enforcement center located at 601 E. Trade Street, Charlotte, North Carolina (the "Subject Phones").

# ATTACHMENT B

## Property to be Seized

1. All stored electronic information on the **SUBJECT PHONES** described in Attachment A that relate to violations of 18 U.S.C. § 1951 including but not limited to:

    a. Text messages, e-mail, address books, phone numbers, voicemail, photographs, videos, and call logs;

    b. Any information that would support that **John Henry MOORE** is the primary user of the Device;

    c. Any information providing **John Henry MOORE**'s location at the time photographs of evidentiary value to this investigation were taken;

2. Evidence of user attribution showing who used or owned the **SUBJECT PHONES** at the time the things described in the Search Warrants were created, edited, or deleted, such as logs, short message system (SMS) messages, phonebooks, photographs, saved usernames and passwords, documents, and browsing history.